IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JOSHUA FOSTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No.: MJM-22-3034 |
| v. | * | |
| | * | |
| PAUL J. WIEDEFELD, SECRETARY | * | |
| OF THE MARYLAND DEPARTMENT | * | |
| OF TRANSPORTATION, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * *

**MEMORANDUM OPINION**

Joshua Foster ("Plaintiff") brings this civil action against Paul J. Wiedefeld, Secretary of the Maryland Department of Transportation ("Defendant"), in his official capacity, alleging claims of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); age and sex discrimination in violation of the Maryland Fair Employment Practices Act ("MFEPA"); and retaliation in violation of Title VII and MFEPA. ECF No. 22 (Am. Compl.). This matter is before the Court on Defendant's Motion to Dismiss the Amended Complaint. ECF 26. The motion is ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant the motion and dismiss the Amended Complaint without prejudice.

1

I.  **FACTUAL BACKGROUND**[1]

Plaintiff was hired in April 2020 to serve as a program manager for the Maryland Department of Transportation ("MDOT") in its Office of Environment. Am. Compl. ¶¶ 1, 6. Plaintiff was fifty-two years of age at the time he was hired and fifty-four years of age at the time of his termination. *Id.* ¶ 7. While at MDOT, Plaintiff worked with Sandra Hertz, then the Assistant Director of MDOT's Office of Environment. *Id.* ¶ 8. Although Hertz was not Plaintiff's direct supervisor, she used her superior managerial position to bully and undermine Plaintiff, including disparaging him to colleagues and managers, and she would not treat younger and female employees in these ways. *Id.* ¶¶ 9, 11–13. Hertz would also exclude Plaintiff from meetings and climate-related initiatives, while including younger and female employees. *Id.* ¶ 15. Plaintiff believes that Hertz's treatment of him was on account of his age and sex and out of concern that Plaintiff was a threat to her position. *Id.* ¶¶ 10, 14.

In or about June 2021, Hertz was promoted to Director of MDOT's new Office of Climate Change Resilience and Adaptation ("OCCRA"). *Id.* ¶ 16. Plaintiff "was expected to be appointed" OCCRA's Assistant Director. *Id.* ¶ 17. Hertz, however, "manipulated the hiring process" to prevent Plaintiff from being considered for the position. *Id.* ¶ 18.

On March 10, 2022, Plaintiff documented a summary of his complaints about Hertz and communicated his complaints to his manager, the Director of the Office of Environment. *Id.* ¶ 20. Plaintiff also contacted MDOT's Office of Diversity and Equity regarding his treatment on March 16, 2022. *Id.* ¶¶ 21–22.

On April 7, 2022, Plaintiff received oral and written notice that he would be terminated from his position at MDOT, and his termination became effective on April 22, 2022. *Id.* ¶¶ 23–24.

---

[1] The factual background is drawn from allegations in the Amended Complaint, ECF No. 22.

2

The termination notice was issued by the Deputy Secretary of MDOT. *Id.* ¶ 26. Plaintiff claims he was performing within his employer's reasonable expectations at the time he was fired. *Id.* ¶ 27.[2]

Plaintiff later learned that the employees hired to replace him were "substantially younger and less experienced than him," and at least one was non-male. *Id.* ¶¶ 19, 28. Plaintiff alleges that his treatment constituted age and sex discrimination and that he was retaliated against for engaging in protected activity, in violation of Title VII and MFEPA. *Id.* ¶¶ 36–48.

On or about April 25, 2022, Plaintiff filed a Charge of Harassment and Discrimination with the Equal Employment Opportunity Commission ("EEOC"). EEOC issued him a right-to-sue letter on November 9, 2022. *Id.* ¶¶ 33–34.

## II.   PROCEDURAL BACKGROUND

On November 23, 2022, Plaintiff filed an initial Complaint against MDOT Secretary James F. Portis, in his official capacity. ECF No. 1. Portis filed a motion to dismiss on March 10, 2023. ECF No. 7. On March 31, 2023, Plaintiff filed a motion for leave to file an amended complaint to name Secretary Wiedefeld as defendant in Portis's place. ECF No. 15. The motion to amend was granted on October 24, 2023, ECF No. 20, and Plaintiff's proposed amendment became the operative Amended Complaint. *See* ECF No. 22 (Am. Compl.).

The Amended Complaint asserts claims against Defendant for sex discrimination in violation of Title VII (Count I); age and sex discrimination in violation of MFEPA (Count II); and retaliation in violation of Title VII and MFEPA (Count III). Defendant filed a Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim for relief under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. ECF No. 26. Plaintiff filed a

---

[2]   Paragraph 25 of the Amended Complaint appears to relate to Plaintiff's retaliation claim, but it is an incomplete sentence, and the Court declines to guess at its meaning. *See* Am. Compl. ¶ 25.

response in opposition to the motion, ECF No. 29, and Defendant filed a reply in support of the motion, ECF No. 30.

## III.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

A defendant may also challenge a court's subject matter jurisdiction of a case by filing a motion to dismiss under Rule 12(b)(1). The plaintiff bears the burden of proving that the court indeed has jurisdiction over the matter. *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015) (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). When subject matter jurisdiction is at issue, "the court is to regard the pleadings 'as mere evidence on the issue, and

4

may consider evidence outside the pleadings . . . .'" *Burns v. Wash. Metro. Area Transit Auth.*, 488 F. Supp. 3d 210, 213 (D. Md. 2020) (quoting *Evans*, 166 F.3d at 647)). This must be done without the court "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Sac & Fox Nation of Okla. v. Cuomo*, 193 F.3d 1162, 1168 (10th Cir. 1999) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also Norton v. Larney*, 266 U.S. 511, 515–16 (1925) ("[T]he jurisdiction of a federal court must affirmatively and distinctly appear and cannot be helped by presumptions or by argumentative inferences drawn from the pleadings."). A failure to exhaust administrative remedies is governed by this standard. *See Khoury*, 268 F. Supp. 2d at 606 (citing *Onuoha v. Grafton Sch.*, 182 F. Supp. 2d 473, 481 (D. Md. 2002)).

IV.   ANALYSIS

   A.  MFEPA Claims

In Counts II and III of the Amended Complaint, Plaintiff alleges that Defendant engaged in age and sex discrimination and retaliation in violation of the MFEPA. Defendant argues that Plaintiff's MFEPA claims should be dismissed because the State of Maryland is immune from suit under the Eleventh Amendment. ECF No. 26 at 4.[3]

Under the Eleventh Amendment to the U.S. Constitution, "a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents." *Dixon v. Balt. City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003). However, "[t]he Eleventh Amendment bar to suit is not absolute. States may consent to suit in federal court." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (citations omitted). "Whether a state has waived its sovereign immunity in a specific instance 'is a matter of

---

[3]   Plaintiff fails to respond to this argument in his opposition brief. *See* ECF No. 29.

state law.'" *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 450 (D. Md. 2014) (quoting *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012)). The courts of Maryland have "adopted a two-part test to determine whether sovereign immunity applies in a specific case: (1) does the entity asserting sovereign immunity qualify, and (2) has the Legislature waived the immunity[?]" *Id.* (citation omitted).

In deciding whether a party qualifies for sovereign immunity, a suit against an individual in his official capacity is deemed a suit against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."). By suing Defendant, the head of MDOT, in his official capacity, Plaintiff is effectively suing MDOT, which, as a state agency, qualifies for sovereign immunity. *See Dixon*, 345 F. Supp. 2d at 513.

When assessing potential waivers of immunity, "Maryland courts 'have strictly construed such waivers in favor of the sovereign,' interpreting any waiver provisions narrowly." *Dennard*, 62 F. Supp. at 450 (quoting *Bd. of Educ. of Balt. Cty. v. Zimmer-Rubert*, 973 A.2d 233, 240 (Md. 2009)). A state's consent to suit in its own courts does not amount to waiver of sovereign immunity in federal court. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). Instead, to constitute a valid waiver, a state statute must expressly "specify the State's intention to subject itself to suit in federal court." *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 102 (4th Cir. 2019) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)).

U.S. Court of Appeals for the Fourth Circuit has held that Maryland does not waive sovereign immunity from MFEPA claims in federal court. *Id.* MFEPA's waiver provision does not

express the state's intent to be subjected to suit in federal court. *Id.* (citing Md. Code Ann., State Gov't § 20-903) ("The State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title."). Indeed, another provision reads that an MFEPA action "shall be filed in the circuit court for the county where the alleged unlawful employment practice occurred." Md. Code Ann., State Gov't § 20-1013(b). There is no similar waiver provision permitting MFEPA claims to be asserted against the state or its agencies in federal court.

Thus, sovereign immunity shields Defendant from Plaintiff's MFEPA claims in federal court, and, for this reason, the Court shall dismiss Count II. Defendant also enjoys sovereign immunity as to Plaintiff's claim for MFEPA retaliation in Count III. Plaintiff's MFEPA claims in Counts II and IIII will be dismissed without prejudice.

**B. Title VII Claims**

In Counts I and III, Plaintiff alleges Defendant discriminated against him on the basis of sex by "subject[ing] [him] to unequal terms and conditions of employment" "through the actions of Ms. Hertz" and then fired him based on his age and sex and in retaliation for submitting complaints about the discrimination, all in violation of Title VII. Am. Compl. ¶¶ 38, 44, 45, 49–51. Additionally, Plaintiff alleges that, prior to his termination, he "was expected to be appointed as the Assistant Director of OCCRA[,]" but "Ms. Hertz manipulated the hiring process[,]" *id.* ¶¶ 17–18, and, the Court infers, this appointment was never made. Defendant argues that Plaintiff's Title VII claims should be dismissed for failure to state plausible claims for relief, pointing out what he contends to be various pleading deficiencies in the Amended Complaint. ECF No. 26 at 8; ECF No. 30 at 3. For the reasons that follow, the Court agrees with Defendant that the Amended Complaint fails to state plausible claims for relief under Title VII.

7

### 1. Applicable Law

Title VII provides that it is an "unlawful employment practice" for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Additionally, it is unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* § 2000e-3(a). At trial in an employment discrimination and retaliation case, the plaintiff bears the burden of proving her claims through one of two methods. The plaintiff may offer "direct or indirect" evidence of discriminatory or retaliatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework outlined by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). The plaintiff need not commit to either of the two approaches at the motion-to-dismiss stage. *Chen v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-15-1796, 2016 WL 4539204, at *17 (D. Md. Aug. 29, 2016).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination or retaliation. *Abilt v. Central Intelligence Agency*, 848 F.3d 305, 315 (4th Cir. 2017); *see also Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318–20 (4th Cir. 2005) (applying *McDonnell Douglas* framework to discrimination claim); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (applying *McDonnell Douglas* framework to retaliation claim). The precise formulation of the required prima facie showing will vary in

8

"differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13. Nonetheless, the plaintiff is generally required to show that the employer took adverse actions against her or him "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). If a plaintiff establishes a prima facie case, a presumption of illegal discrimination or retaliation arises, and the burden of production shifts to the employer to state a legitimate, non-discriminatory reason for its adverse action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted." *Burdine*, 450 U.S. at 255. To prevail, the plaintiff must then prove, by a preponderance of evidence, "that the [employer's] proffered reason was not the true reason for the employment decision" and that the plaintiff "has been the victim of intentional discrimination." *Id.* at 256.

Notably, the *McDonnell Douglas* proof scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). As the Supreme Court explained in *Swierkiewicz v. Sorema*, the "*prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard[;]" it is "not a pleading requirement." 534 U.S. 506, 510 (2002). At the motion-to-dismiss stage, a plaintiff need not establish a prima facie case of discrimination or retaliation under *McDonell Douglas*; she or he must instead satisfy the pleading standard established in *Iqbal* and *Twombly*. *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for all civil actions, . . . and it applies to antitrust and discrimination suits alike . . . .") (citations omitted). Thus, a plaintiff must allege sufficient facts to support a reasonable inference that an adverse action was motivated by unlawful discrimination or retaliation. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–86 (4th Cir. 2015); *Coleman v. Md.*

9

*Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (holding that a complaint must "establish a plausible basis for believing . . . that race was the true basis for [the adverse employment action]"), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). And reference to the elements of a prima facie claim of discrimination "is helpful to gauge the sufficiency of the allegations[,]" even if the pleading is not actually required to satisfy all the elements. *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 734 (D. Md. 2023).

### 2. Title VII Sex Discrimination

Here, the Court construes Count I as alleging three forms of sex-based employment discrimination: (a) workplace harassment or hostile work environment, (b) failure to promote, and (c) termination. The Court will address the sufficiency of Plaintiff's pleading of each of these discrimination claims.

#### a. Hostile Work Environment

To establish a prima facie case of sex-based hostile work environment, "a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of [his] sex, (3) was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment, and (4) was imputable to [his] employer." *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 716 (4th Cir. 2024).

Here, Plaintiff alleges that Hertz engaged in "acts of bullying" through "competition . . . over climate topics, subject matter, and office 'turf[,]'" and through "marginalization." Am. Compl. ¶¶ 9–18. He lists various forms of such "bullying" by Hertz to include "[w]ork interference/sabotage[;] [e]ncouragement of others to go against [Plaintiff;]" "[s]preading rumors and gossip about [Plaintiff;]" "disparag[ing] Plaintiff to his colleagues and managers within the department[]"; and "exclud[ing] Plaintiff from meetings and climate related activities and

10

initiatives . . . ." *Id.* ¶¶ 11, 13, 15. Plaintiff further alleges that Hertz "did not treat female employees" in the foregoing ways. Id. ¶¶ 12, 15. Thus, the Amended Complaint sufficiently alleges that Hertz subjected Plaintiff to unwelcome conduct based on his sex.

However, the Amended Complaint does not provide sufficient facts to show that Hertz's conduct was imputable to Defendant and was so "severe or pervasive" as "to alter the conditions of [Plaintiff's] employment and create an abusive working environment . . . ." *Cosby*, 93 F.4th at 716.

### i. Imputable to Employer

A hostile work environment is imputable to an employer under Title VII if it is created by a supervisor with authority over the employee, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); or if the employer "knew or should have known" about coworker harassment and "failed to take effective action to stop it[,]" *Sunbelt Rentals*, 521 F.3d at 319 (citation omitted). A workplace harasser qualifies as a supervisor under Title VII when "he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013).

Here, the Amended Complaint does not plead any workplace harassment that is imputable to Plaintiff's employer. The sole workplace harasser identified in the Amended Complaint is Hertz, and the pleading acknowledges that Hertz was never Plaintiff's supervisor. Although the Amended Complaint includes allegations that Plaintiff reported Hertz's conduct to his manager, the pleading does not state whether any unwelcome conduct by Hertz or anyone else continued after Plaintiff made these complaints. Thus, it is unclear whether management "failed to take effective action to stop" Hertz's conduct after it became aware of it. *Sunbelt Rentals*, 521 F.3d at 319. Accordingly,

11

the Court cannot find that the Amended Complaint adequately pleads any workplace harassment imputable to Defendant.

### ii. Severe or Pervasive

"A hostile environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (cleaned up). The severe-or-pervasive element has both objective and subjective components. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993); *Strothers v. City of Laurel*, 895 F.3d 317, 331 (4th Cir. 2018); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). A plaintiff must show both that he "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id.* (citation omitted). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" *Boyer-Liberto*, 786 F.3d at 277 (citation omitted). Factors to consider include the frequency and severity of the conduct, whether the employee is physically threatened or humiliated, and whether there is an unreasonable interference with the employee's work performance. *Perkins*, 936 F.3d at 208 (citing *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)). The severe-or-pervasive analysis is not, and "by its nature cannot be, a mathematically precise test." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 22).

Here, the Amended Complaint does not provide enough facts about his unwelcome treatment by Hertz for this Court to conclude it was so severe and pervasive that it created an abusive work environment. For example, the Amended Complaint does not speak to the frequency of Hertz's conduct or the extent to which it interfered with Plaintiff's work performance. Plaintiff

alleges in conclusory fashion that his treatment by Hertz "subjected [him] to unequal terms and conditions of employment" but offers an inadequate factual basis for this conclusion. Am. Compl. ¶ 38. The Court cannot accept such conclusory statements as true in deciding the sufficiency of a pleading on a Rule 12(b)(6) motion to dismiss.

Accordingly, the Motion to Dismiss will be granted as to any claim for hostile work environment in Count I. This claim will be dismissed without prejudice.

### b. Failure to Promote

To demonstrate a prima facie case of discriminatory failure to promote based on sex, "a plaintiff must show that: (1) [he] is a member of a protected group, (2) [he] applied for the position in question, (3) [he] was qualified for that position, and (4) the defendants rejected [his] application under circumstances that give rise to an inference of unlawful discrimination." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319 (4th Cir. 2005) (citing *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 268 (4th Cir. 2005)).

Here, Plaintiff alleges that he "was expected to be appointed as the Assistant Director of OCCRA[,]" but "Ms. Hertz manipulated the hiring process to avoid having to consider Plaintiff for the position." Am. Compl. ¶¶ 17–18. The Court infers that Plaintiff was not appointed to this position before he was terminated, although the Amended Complaint does not specifically address this question. However, Plaintiff does not allege any of the elements of a prima facie case of sex discrimination based on a failure to promote; nor does he offer any other facts to support an inference that he was denied the appointment based on his sex. Even if, based on the totality of Plaintiff's allegations concerning Hertz, the Court infers that Hertz carried a sex-based discriminatory animus toward Plaintiff, the Amended Complaint does not offer an adequate explanation of what role Hertz played in the hiring process for the Assistant Director position or

13

how she "manipulated" it. Moreover, the passive-voice statement in the Amended Complaint that Plaintiff "was expected" to receive the appointment leaves unclear whether Plaintiff was qualified for the position or ever sought to obtain it. It is not even clear whether the position was ever filled at all.

Ultimately, the Court finds the facts alleged in the Amended Complaint inadequate to state a plausible claim for discriminatory failure to promote. The claim will be dismissed without prejudice.

### c. Termination

"To establish a prima facie case of discriminatory discharge, [a plaintiff] must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

The Court finds the Amended Complaint inadequate to state a plausible sex discrimination claim based on the termination of Plaintiff's employment. A termination of employment "indisputably constitute[s] adverse employment action." *Id.* at 151. However, the Amended Complaint offers no facts to support an inference that Plaintiff's employment was terminated on account of his sex. *See Gaines*, 657 F. Supp. 3d at 735 ("[T]he adverse action must have 'occurred under circumstances that raise a reasonable inference of unlawful discrimination . . . .'") (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021)). Plaintiff alleges that, after his termination, he was replaced by "employees . . . substantially younger and less experienced than him[,]" Am. Compl. ¶ 28, but he does not allege that persons outside his protected class (i.e., a woman) replaced him in the position he vacated.

Moreover, Plaintiff's assertion that he "was performing his job within the reasonable expectations of Defendant at the time he was terminated[,]" Am. Compl. ¶ 27, is conclusory and inadequate to support a discrimination claim without further factual enhancement. *See Mason v. Montgomery Cnty.*, Civ. No. PWG-13-1077, 2015 WL 3891808, at *5 (D. Md. June 23, 2015) (finding allegations that plaintiff "performed exemplary work" and "met all of the Department's legitimate expectations" to be "threadbare and conclusory and therefore insufficient to state a claim"); *Bynum v. Martin*, Civ. No. GJH-16-2067, 2016 WL 7468050, at *5 (D. Md. Dec. 27, 2016) (finding plaintiff's allegation that "at all times prior to [termination date,] Plaintiff was at least a fully successful performer" to be "a conclusory statement" and "not sufficient to state a claim for disparate treatment").

The Court concludes that Plaintiff fails to state a claim for discriminatory termination based on sex in Count I of the Amended Complaint. The Motion to Dismiss will be granted as to this claim, which shall be dismissed without prejudice.

### 3. Retaliation

In Count III of the Amended Complaint, Plaintiff alleges Defendant retaliated against him by terminating his employment for reporting Hertz's conduct, in violation of Title VII and Maryland law. Defendant argues that Plaintiff did not engage in protected activity prior to his termination and, even if he did, the protected activity was not causally connected to his termination. ECF No. 26 at 8–9. The Court agrees with Defendant that Count III fails to state a plausible Title VII retaliation claim and will grant the Motion to Dismiss as to this claim.

Employers are prohibited under Title VII from retaliating against an employee for reporting discrimination in the workplace. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *see also* 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires a plaintiff to

establish "(1) that [he] engaged in a protected activity, (2) that [his] employer took an adverse action against [him], and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (citation omitted).

An adverse action sufficient to sustain a retaliation claim is one that "a reasonable employee would have found [to be] materially adverse," that is, sufficient to dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2005). Here, the termination of Plaintiff's employment suffices to establish a materially adverse action by his employer. *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010).

The required causal link between an employee's protected activity and an employer's adverse action can be established "by 'show[ing] that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or a combination of the two." *Laurent-Workman*, 54 F.4th at 218–19 (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)). "'[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Id.* at 219 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The employer must also have actual awareness of the plaintiff's engagement in protected activity. *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006).

Here, Plaintiff alleges that he received notice of his termination about one month after he began submitting "complaints about Ms. Hertz to his manager" and about three weeks after he first contacted MDOT's internal EEO office, and his termination was effective about two weeks after

he received notice. Am. Compl. ¶¶ 20–24. These time frames are sufficiently short to establish a causal link for purposes of a prima facie retaliation claim.

Notwithstanding, the Amended Complaint falls short of adequately pleading a Title VII protected activity by Plaintiff.

"Protected activities under Title VII include both participation and opposition activities." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 411 (4th Cir. 2022) (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 257 (4th Cir. 1998)). Participation activities include filing a charge of workplace race discrimination with EEOC or otherwise assisting or participating in an investigation or proceeding under Title VII. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). The Fourth Circuit has taken "an expansive view of what constitutes oppositional conduct, recognizing that it 'encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin*, 149 F.3d at 259).

However, "[n]ot all employee complaints are protected by Title VII's retaliation provision . . . ." *McIver*, 42 F.4th at 411 (citing *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000). "Complaints about management activities that would not constitute unlawful discrimination do not count as protected activity." *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018). For instance, "[g]eneral complaints of unfair treatment are not protected activity." *Bowman v. Baltimore City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 248 (D. Md. 2016).

Here, the Amended Complaint leaves entirely unclear whether Plaintiff ever lodged any complaints of Title VII-prohibited discrimination with his employer. Plaintiff alleges that he summarized and communicated "his complaints about Ms. Hertz to his manager," Am. Compl. ¶¶

20–21, but he leaves unclear whether these complaints characterized or described Hertz's mistreatment of Plaintiff as sex-based or discriminatory at all. The substance of Plaintiff's contacts with MDOT's internal EEO office are even less clear. All the Amended Complaint says about the EEO office is that Plaintiff initially contacted it on March 16, 2022, after first contacting "the EER Office . . . ." *Id.* ¶¶ 21–22.

Because the Amended Complaint leaves unclear whether Plaintiff ever opposed employment practices prohibited by Title VII or participated in a Title VII investigation or enforcement proceeding, it fails to state a plausible claim for relief under Title VII's anti-retaliation provisions. The Motion to Dismiss must be granted as to Count III, which shall be dismissed without prejudice.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 26) shall be granted, and the Amended Complaint will be dismissed without prejudice.

A separate Order will follow.

 9/30/24  
Date

Matthew J. Maddox  
United States District Judge